Submitted February 4, reversed March 23, 2022

In the Matter of H. L. C.,
a Person Alleged to be Extremely Dangerous
with Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

H. L. C.,
*Appellant.*

Marion County Circuit Court
20CC06843; A176314

507 P3d 346

Appellant seeks reversal of a judgment committing him to the jurisdiction of the Psychiatric Security Review Board (PSRB) for a period of time not to exceed 24 months, based on a finding that appellant is an extremely dangerous person who suffers from a mental disorder resistant to treatment. Appellant contends, and the state concedes, that the court erred in committing appellant under the extremely dangerous person statute, ORS 426.701. *Held*: Appellant, who suffers from an intellectual disability, could not be committed under ORS 426.701, because an intellectual disability does not qualify as a mental disorder under that statute.

Reversed.

Donald D. Abar, Judge.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jona J. Maukonen, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed.

**ORTEGA, P. J.**

Appellant seeks reversal of a judgment committing him to the jurisdiction of the Psychiatric Security Review Board (PSRB) for a period of time not to exceed 24 months and prohibiting him from purchasing or possessing a fire-arm, illegal knife, or unauthorized weapons, based on a finding that appellant is an extremely dangerous person who suffers from a mental disorder resistant to treatment. ORS 426.701 (2019), *amended by* Or Laws 2021, ch 482, § 1; ORS 426.702 (2019), *amended by* Or Laws 2021, ch 482, § 2. Appellant contends that he could not be committed based on ORS 426.701, because the evidence was that he only has an intellectual disability, which is not a qualifying mental dis-order under the current version of the statute and adminis-trative rules. The state concedes that, although the current version of the statute and rules did not apply to appellant's commitment, an intellectual disability also is not a "men-tal disorder" for purposes of ORS 426.701 (2019), and, as a result, the judgment should be reversed. As explained below, we agree with the state and reverse.

Appellant was committed on June 2, 2021. The 2021 amendment to ORS 426.701 did not take effect until July 14, 2021, Or Laws 2021, ch 482, § 3, and, as a result, the 2019 version of the statute applied to appellant's commitment. That statute provided, in relevant part:

"(1)   For the purposes of this section and ORS 426.702:

"(a)   A person is 'extremely dangerous' if the person:

"(A)   Is at least 18 years of age;

"(B)   Is exhibiting symptoms or behaviors of a men-tal disorder substantially similar to those that preceded the act described in subsection (3)(a)(C) of this section; and

"(C)   Because of a mental disorder:

"(i)   Presents a serious danger to the safety of other persons by reason of an extreme risk that the person will inflict grave or potentially lethal physical injury on other persons; and

"(ii)   Unless committed, will continue to represent an extreme risk to the safety of other persons in the foreseeable future.

"(b)   'Mental disorder' does not include:

"(A)   A disorder manifested solely by repeated criminal or otherwise antisocial conduct; or

"(B)   A disorder constituting solely a personality disorder.

"(c)   A mental disorder is 'resistant to treatment' if, after receiving care from a licensed psychiatrist and exhausting all reasonable psychiatric treatment, or after refusing psychiatric treatment, the person continues to be significantly impaired in the person's ability to make competent decisions and to be aware of and control extremely dangerous behavior."

ORS 426.701(1) (2019).

At the time of appellant's commitment, the applicable administrative rule defined "mental disorder" for purposes of ORS 426.701 and ORS 426.702 as:[1]

"(a)   Any diagnosis of mental disorder which is a significant behavioral or psychological syndrome or pattern that is associated with distress or disability causing symptoms or impairment in at least one important area of an individual's functioning that is resistant to treatment.

"(b)   The term 'mental disorder' does not include an abnormality manifested solely by repeated criminal or otherwise antisocial conduct. The term 'mental disorder' does not include a disorder constituting solely a personality disorder."

OAR 859-200-0020(9) (Feb 22, 2021).

The parties agree, and the record supports, that the trial court based appellant's commitment solely on evidence and a finding that appellant suffered from an intellectual

---

[1] The current administrative rules, for purposes of ORS 426.701 and ORS 426.702, exclude from the definition of mental disorder "a diagnosis of intellectual disability or developmental disability as defined in ORS 427.005." OAR 859-200-0020(10), (11) (current rule defining "qualifying mental disorder" and "mental illness"); *see also* OAR 859-200-0020(9), (10) (temporary rule effective June 21 to December 17, 2021, which included the same exclusion).

disability, as that term is defined in ORS 427.005(10)(a),[2] and not based on evidence or a finding of a mental disorder other than appellant's intellectual disability. The trial court, however, concluded that appellant's intellectual disability qualified as a mental disorder resistant to treatment under ORS 426.701 (2019). Thus, the only issue before us is whether an intellectual disability can qualify as a mental disorder under that statutory scheme. To make that determination, we must discern the intent of the legislature by examining the text of the statute in context, considering any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

As set out above, neither ORS 426.701 (2019) nor OAR 859-200-0020 (Feb 22, 2021) specifically addressed whether a mental disorder includes an intellectual disability. Mental disorder and mental illness are not statutorily defined for purposes of ORS 426.701 (2019). The administrative rule purports to define the term mental disorder; however, it provides primarily that a mental disorder is "[a]ny diagnosis of mental disorder," which is unhelpful for our purposes. As a result, we start with the common understanding of the terms mental disorder and mental illness. Those terms refer to medical conditions "that are marked primarily by sufficient disorganization of personality, mind, or emotions to impair normal psychological functioning and cause marked distress or disability and that are typically associated with a disruption in normal thinking, feeling, mood, behavior, interpersonal interactions, or daily functioning." *Mental illness*, Unabridged.Merriam-Webster.com (accessed Mar 16, 2022) (applying same definition to "mental disorder").

In contrast, an intellectual disability is commonly understood to mean a "significant impairment in intellectual ability accompanied by deficits in skills necessary for independent daily functioning." *Intellectual disability*, Unabridged. Merriam-Webster.com (accessed Mar 16, 2022). That common understanding is reflected in the statutory definition of

---

[2] ORS 427.005(10)(a) provides:

"'Intellectual disability' means an intelligence quotient of 70 or below as measured by a qualified professional and existing concurrently with significant impairment in adaptive behavior, that is manifested before the individual is 18 years of age."

intellectual disability that applies to ORS chapter 427: "an intelligence quotient of 70 or below as measured by a qualified professional and existing concurrently with significant impairment in adaptive behavior, that is manifested before the individual is 18 years of age." ORS 727.005(10)(a). Based on those common meanings, a mental disorder refers to an impairment of psychological function, while an intellectual disability refers to an impairment of intellectual function, indicating that the legislature would have understood that an intellectual disability is not a mental disorder.

That the legislature intended to distinguish those two types of impairments from each other is further manifest in the organization of the statutes—ORS chapter 426 applies to persons with mental illness and nowhere uses the term intellectual disability, while ORS chapter 427 applies to persons with an intellectual or developmental disability and nowhere uses the term mental illness or mental disorder. *Cf. PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (setting out contextual rules that "use of a term in one section and not in another section of the same statute indicates a purposeful omission, and that the use of the same term throughout a statute indicates that the term has the same meaning throughout the statute" (citations omitted)). Additionally, ORS 427.290 specifically provides commitment procedures for a person with an intellectual disability, resulting in a commitment to the jurisdiction of the Department of Human Services for up to a year. ORS 426.701 (2019) and ORS 426.702 (2019), however, provide for commitment of an extremely dangerous person with a mental disorder that is resistant to treatment, resulting in commitment to the jurisdiction of the PSRB for up to two years. That context of different statutes with different outcomes for persons, depending on the person's impairment, further supports the legislature's intention to not treat a person with an intellectual disability as a person with a mental disorder.

We thus conclude that an intellectual disability does not qualify as a mental disorder under ORS 425.701 (2019), and the trial court erred in committing appellant under that statute.

Reversed.